## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

LLOYD'S OF LONDON NEWLINE         :
SYNDICATE 1218 and NEWLINE CORPORATE :
NAME LIMITED (UK),               :
                         :
             Plaintiffs,          :
                         :
         vs.                  :     **Case No. _____**
                         :
DONALD O. CLARK,            :
                         :     **JURY TRIAL DEMANDED**
             Defendant.        :

## COMPLAINT

Plaintiffs, by and through their attonreys, allege for their Complaint against Defendant as follows:

### NATURE OF THE ACTION

1.       On March 31, 2004, Peter D. Bistrian ("Bistrian"), while awaiting trial on fraud charges in connection with a scheme to obtain four luxury automobiles, stole $1,412,858.40 from Columbus Stainless (Pty) Ltd ("Columbus") through a scheme involving the submission of fraudulent invoices to Columbus and a forged consultants' agreement purportedly between Columbus and Bistrian.

2.       Immediately upon receipt of the stolen funds, Bistrian, through a series of transactions, dispersed differing portions of the funds to different accounts, persons and entities, including $270,000 transmitted to Defendant Donald O. Clark ("Clark"), an attorney and sometime business partner of Bistrian. Approximately $100,000 of such funds have since been disbursed by

425781.1 DocsNY

Clark to himself and others, all or much of it after Clark gained knowledge of the tainted nature of the funds.

3.     On July 27, 2006, Bistrian pled guilty to four counts of wire fraud for his role in the theft from Columbus (United States of America v. Peter Bistrian, Criminal Docket No. 0:05-cr-00172-BMK (U.S.D.C., E.D. Pa.)) and to two counts of wire fraud and two counts of bail jumping in connection with the scheme to obtain four luxury automobiles (United States of America v. Peter Bistrian, Criminal Docket No. 03-757-1 (U.S.D.C., E.D. Pa.)).

4.     Plaintiffs reimbursed Columbus under Crime Insurance Policy No. 509QA044803(1), effective July 1, 2003 to July 1, 2004 ("Policy"), as respects the stolen funds, thus becoming equitably subrogated to the rights of Columbus as respects those funds. This is Plaintiffs' civil action seeking recovery from Clark of those funds stolen from Columbus and placed in Clark's possession by Bistrian ($270,000), and other or further restitutionary remedies and damages, as more fully detailed herein.

## THE PARTIES

5.     Plaintiff Lloyd's of London Newline Syndicate 1218 ("Syndicate 1218") is an underwriting member of Lloyd's of London with its principal place of business at Suite 5/4, London Underwriting Centre, 3 Minster Court, Mincing Lane, London, England. Syndicate 1218 conducted insurance business through Managing Agent Newline Underwriting Management Ltd., and is the sole subscriber to the Policy.

6.     Plaintiff Newline Corporate Name Limited (UK) ("Newline") is a registered company of the United Kingdom with its principal place of business at Suite 5/4, London Underwriting Centre, 3 Minster Court, Mincing Lane, London, England. Newline owns 100% of Syndicate 1218.

7.    Defendant Clark is a citizen and resident of the District of Columbia, residing at 3010 Ellicott Street, N.W., Washington, DC.

## JURISDICTION AND VENUE

8.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(2) and all other applicable provisions of the United States Code and Federal law, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and all other applicable provisions of the United States Code and Federal law.

## FACTUAL BACKGROUND

9.    Columbus is a producer of stainless steel in South Africa. It purchases molybdenum oxide, one of the raw materials used in the production process, from Corporacion Nacional del Cobre de Chile ("Codelco"). The contract between Columbus and Codelco specifies that any payments from Columbus to Codelco for purchases of molybdenum oxide should be sent by wire transfer to Codelco's account at Citibank New York.

10.    On or about January 31, 2004, Bistrian sent, and aided and abetted the sending of, an invoice to Columbus in the amount of $1,421,858.40, purporting to be from Codelco. Rather than provide the correct information regarding Codelco's payee account at Citibank New York, the invoice provided that payment should be sent to a Citibank New York account in the name of Wm. Jeffrey Komlo ("Komlo"), Bolton Capital Corporation ("Bolton"). Komlo, a classmate and roommate of Bistrian at the University of Delaware, operated Bolton, a company involved in investment banking, insurance and financial services.

11.    In March 2004, Bistrian placed a telephone call to Komlo and stated that he had done a deal in Europe involving a consulting agreement and was ready to collect his fee. Bistrian

expressed an urgency to receive the funds, telling Komlo he needed the money within 24 hours. Bistrian knew that Komlo had an account at Citibank and asked if he would be able to have the money wire transferred into this account. Komlo told Bistrian to contact Louis Petriello ("Petriello"), Bolton's corporate attorney.

12.    Petriello then had a series of telephone conversations with Bistrian and also corresponded with him via electronic mail. Bistrian retained Petriello to represent him in connection with his company, The InterCap Group LLC ("InterCap"). However, since it would take some period of time to open bank accounts in the company's name, Petriello agreed that after the wire transfer was made from Columbus to Komlo's Citibank account, $1,296,858 would be transferred to Petriello's attorney trust account at Harleysville National Bank and Trust Company ("Harleysville").

13.    On March 31, 2004, upon receipt of the invoice from Codelco instructing it to wire transfer moneys owed to Komlo's account, Columbus wire transferred $1,421,858.40, the amount of the fraudulent invoice, into Komlo's account at Citibank New York. That same day, following Bistrian's instructions, Petriello arranged for Citibank to transfer $1,296,858 from Komlo's account (leaving $125,000) to Petriello's IOLTA attorney trust account at Harleysville. Once the money was received in his attorney trust account, Petriello began disbursing it, either by check or wire transfer, in accord with instructions he had received from Bistrian.

14.    Clark received two checks drawn on the IOLTA Trust Account of Petriello at Harleysville, one numbered 1169, dated March 31, 2004, in the amount of $250,000, and a second, numbered 1181, dated April 8, 2004, in the amount of $20,000.

15.    On April 8, 2004, at the direction of Bistrian, Petriello opened a money market business checking account and a business checking account at Commerce Bank in the name of

InterCap, with himself as the sole signatory on the accounts. Each account was opened with a $5,000 check drawn on Petriello's escrow account. Once the accounts were opened, Petriello transferred the $512,900 remaining in his escrow account into the money market account and began disbursing it in accordance with additional instructions he had received from Bistrian.

16.     On April 23, 2004, Komlo received a telephone call from John Thompson, an investigator with Citigroup Corporate Security and Investigations Services, questioning the validity of the wire transfer into Komlo's account. Thereafter, Komlo and Petriello had several telephone calls with Thompson, and Petriello then spoke with Bistrian.

17.     On April 27, 2004, Petriello sent a letter by facsimile to Thompson, attaching a document entitled "Consulting Agreement/Retainer Agreement," which Bistrian had provided to Petriello in response to Petriello's questions. The agreement, dated October 14, 2003, is between InterCap (Bistrian's company) and Columbus, and provides that Columbus will pay InterCap $1,450,000 for consultancy relating to corporate expansion. The agreement bears signature lines for Dave Martin as director of Columbus and Bistrian as president of InterCap, and purports to be signed by both of these individuals.

18.     David Philip Martin has supplied a sworn affidavit to United States counsel for Columbus, stating that he is the chief executive officer of Columbus, that Columbus never entered into any agreement with InterCap, that neither InterCap nor Peter Bistrian ever provided any services to Columbus, and that the signature which purports to be his on the consulting agreement provided by Bistrian is a forgery.

Case 1:06-cv-01581-HHK    Document 1    Filed 09/11/2006    Page 6 of 10

19.     On or about May 4, 2004, Petriello informed Clark that the signature on the purported consulting agreement between Bistrian and Columbus was a fraud and that Columbus had an affidavit to that effect.

20.     Additionally, Clark met with and had communications with members of The United States Attorneys Office for the Eastern District of Pennsylvania and the Federal Bureau of Investigation during which they informed Clark of the allegations of theft against Bistrian and the tainted nature of the funds held by Clark.

21.     On or about October 7, 2004, Petriello secured and returned to Columbus slightly in excess of $500,000 of the $1,421,858.40 that had been stolen by Bistrian. In June 2006, DLA Piper Rudnick Gray Cary LLP US, a criminal defense law firm that had been retained to represent Bistrian in connection with his scheme to obtain four luxury automobiles, returned an additional $30,000 that it had received from the funds stolen by Bistrian.

22.     The present location of the balance of the funds stolen by Bistrian are unknown except for approximately $170,000 held by Clark, an additional $100,000 that had been received by Clark and disbursed to himself and others, and $80,000 received by, but not returned by, Komlo.

23.     Komlo had initially received from Bistrian $125,000 of the funds stolen from Columbus, but subsequently returned $45,000 to Columbus (part of the $500,000 recovered from Petriello) and promised to return the additional $80,000. Komlo, however, failed to do so, and is presently a fugitive from unrelated criminal convictions, charges and investigations pending in the Commonwealth of Pennsylvania.

24.     On November 1, 2004, Plaintiffs reimbursed Columbus for its loss of the Columbus funds under the terms of the Policy.

25.    As a matter of law, by that payment, Plaintiffs became equitably subrogated to all claims and rights of Columbus as respects the stolen funds and the payments made under the Policy as respects the stolen funds, and are thus entitled to bring this action and assert the causes of action contained within this Complaint.

### FIRST CAUSE OF ACTION
### (Unjust Enrichment)

26.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 25 of this Complaint.

27.    Clark's disbursement of, use of, and continued retention of funds stolen by Bistrian, after learning of the criminal history, allegations and criminal charges against Bistrian, is wrongful.

28.    Clark has been unjustly enriched and to allow Clark to retain these funds, or not reimburse Plaintiffs for Clark's disbursement or use of such funds, would violate fundamental principles of justice, equity and good conscience.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against Clark in the sum of $270,000, plus interest and such other relief as the court shall deem appropriate.

### SECOND CAUSE OF ACTION
### (Restitution For Mistaken Payment)

29.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 28 of this Complaint.

30.    When Columbus transferred $1,412,858.40 to the accounts specified on the false, forged and fraudulent invoices provided by Bistrian, it did so under the mistaken belief that the invoice was true and proper. Had Columbus known the facts set forth in the preceding Paragraphs of this Complaint, Columbus would not have transferred $1,412,858.40 in payment of the false,

forged and fraudulent invoices provided by Bistrian, $270,000 of which was subsequently disbursed to Clark.

31.    Plaintiffs, as equitable subrogees of Columbus, are entitled to recover from Clark, who has been unjustly enriched, amounts stolen from Columbus and placed in his hands.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against Clark in the amount of $270,000, plus interest and such other relief as the court shall deem appropriate.

### THIRD CAUSE OF ACTION
### (Accounting)

32.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 31 of this Complaint.

33.    Plaintiffs are unable to determine the exact amount of monies that Clark presently possesses or the exact amount of monies Clark has disbursed to himself or others, or the reasons, basis and evidence for such disbursements. Clark is in possession of, and has access to, his records and accounts which he has repeatedly refused to provide Plaintiffs, which reflect those transactions and amounts.

34.    Plaintiffs are entitled to an equitable accounting to determine the exact amount of monies that Clark received from Bistrian, the exact amount of such monies Clark presently possesses, and the exact amount of such monies that Clark has disbursed to himself and others, as well as the reasons, basis and evidence for such disbursements, in order to determine the exact amount Plaintiffs are entitled to recover under the causes of action stated herein.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor directing that Clark provide Plaintiffs with an accounting of the amount of monies that he received from Bistrian,

the amount of such monies that he presently possesses, and the amount of such monies that he has disbursed to himself and others, as well as the reasons, basis and evidence for such disbursements.

## FOURTH CAUSE OF ACTION
### (Conversion)

35.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 34 of this Complaint.

36.    Clark's unlawful acceptance, retention and/or disbursement of the funds stolen from Columbus caused Columbus to suffer a deprivation of that property, without its consent, and without lawful justification.

37.    Subsequent to his receipt of the improperly obtained Columbus funds, Clark converted such funds or a portion of such funds to his own use.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against Clark for damages in the amount of that portion of the funds stolen from Columbus that Clark accepted, retained, disbursed, and/or converted to his own use, plus interest and such other relief as the court shall deem appropriate.

## FIFTH CAUSE OF ACTION
### (Constructive Trust)

38.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 37 of this Complaint.

39.    By virtue of the facts above, Bistrian engaged in wrongdoing, fraud and unconscionable conduct, and benefitted from that conduct at the expense of Columbus and Plaintiffs. Clark possesses, or possessed and disbursed, $270,000 of the $1,412,858.40 stolen from Columbus.

40.    Upon information and belief, Clark possesses $270,000 of the $1,412,858.40 stolen from Columbus and/or real property, personal property, and bank accounts acquired with the proceeds of the stolen funds.

41.    Plaintiffs are entitled to, and request, equitable relief in the form of a constructive trust upon $270,000 of the $1,412,858.40 stolen from Columbus in Clark's possession and upon all real property, personal property, and bank accounts acquired with the proceeds of the funds stolen from Columbus.

**WHEREFORE,** Plaintiffs demand that judgment be entered in their favor and against Clark concerning the proposed equitable relief and such other relief as the court shall deem appropriate.

<u>**DEMAND FOR JURY**</u>

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all claims so triable.

Dated: September 8, 2006

William G. Ballaine
Attorney ID No. NY0027
LANDMAN CORSI BALLAINE & FORD, P.C.
120 Broadway, 27th Floor
New York, New York 10271-0079
(212) 238-4800

Attorneys for Plaintiffs